**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
ROOD RESIL,                    :
                               : Civil Action No. 11-2051 (JLL)
          Petitioner,          :
                               :
     v.                        :     **O P I N I O N**
                               :
ROY L. HENDRICKS, et al.,      :
                               :
          Respondents.         :
_____:

**APPEARANCES:**

   ROOD RESIL, Petitioner, <u>Pro</u> <u>Se</u>
   J201024574
   Essex County Correctional Facility
   354 Doremus Avenue
   Newark, New Jersey 07032

   JEFFREY M. BAUER, ESQ.
   U.S. DEPARTMENT OF JUSTICE
   OFFICE OF IMMIGRATION, LITIGATION DISTRICT
   COURT SECTION
   P.O. Box 868, Ben Franklin Station
   Washington, D.C.  20044
   Counsel for Respondents

**LINARES, District Judge**

   Petitioner, Rood Resil, is currently being detained by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") at the Essex County Correctional Facility in Newark, New Jersey, pending his removal from the United States.[1]

---

[1] Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency of the Department of Justice, and its functions were transferred to the Department of Homeland Security ("DHS").  <u>See</u> Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov.

On or about April 8, 2011, Resil filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, in which he challenges his continued detention pending removal as unconstitutional. The petition seeks issuance of an Order to Show Cause. Resil brings this action against Roy L. Hendricks, Warden at the Essex County Correctional Facility where petitioner is presently detained; and the ICE in general, as the named party respondents (hereinafter referred to as "the Government") in this action. (See Petition at Caption, ¶ 5).

The Government provided a response to the petition on or about May 19, 2011, together with the relevant record. (Docket entry no. 5). Resil filed a reply letter on or about May 25, 2011. (Docket entry no. 6). For the reasons stated below, this petition for habeas relief will be denied because petitioner has not demonstrated that his removal is not reasonably foreseeable or that his continued detention is constitutionally impermissible.

I.   BACKGROUND

Resil states that he is a native and citizen of Haiti, who was admitted into the United States as a lawful permanent resident on or about September 6, 1989. (Petition, ¶¶ 1, 11).

---

25, 2002). The Immigration and Customs Enforcement agency ("ICE") of the DHS is responsible for the interior investigation and enforcement functions that formerly were performed by the INS.

The Government records confirm that Resil is a native and citizen of Haiti, who adjusted to lawful permanent resident alien status earlier on November 25, 1987.  (Respondents Exhibit 2, Written Decision of Immigration Judge in In the Matter of Rood Resil, Case No. A042-146-903, dated October 23, 2008).  On April 30, 2008, Resil was convicted in the United States District Court for the Southern District of Texas for transporting undocumented aliens within the United States by means of a private motor vehicle for private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(B)(I) and 18 U.S.C. § 2.  He was sentenced to fifteen years in prison with three years of supervised release.  (Id.; see also Respondents' Ex. 3, Judgment in Criminal Case, United States v. Resil, Case No. 07-cr-01118-001 (S.D. Tex. May 1, 2008); and Petition at ¶ 12).

On August 20, 2008, while Resil was serving his sentence for the above-mentioned conviction, the DHS issued a Notice to Appear and Order to Show Cause against Resil, charging that he was removable under the Immigration and Nationality Act ("INA") § 237(a)(1)(E)(iii), 8 U.S.C. § 1227(a)(1)(E)(iii), for having been convicted of alien smuggling, and placed him in removal proceedings.  (Resp. Ex. 4; Petition at ¶ 13).  On October 23, 2008, an Immigration Judge found Resil deportable and ordered his removal to Haiti, based on his April 30, 2008 federal conviction for alien smuggling.  (Resp. Ex. 2; Petition at ¶ 14).

3

In his Petition, Resil states that he had been released from immigration custody in Texas on January 21, 2009, and placed under an Order of Release and Supervision. He was asked to report to the ICE at the federal building in Newark, New Jersey, and placed with an electronic ankle-bracelet on February 6, 2009. Resil states that he was able to maintain his job as a truck driver and travel state to state on the condition that he report by calling the ICE once he entered that state to give notification to the ICE as to his whereabouts. Resil contends that he had no contact with law enforcement during this period of release under supervision and while he wore the ankle bracelet. (Petition at ¶¶ 15-17).

The Government provides a record that plainly disputes Resil's allegations concerning his cooperation during his release from ICE custody. On June 1, 2008, Resil was released from federal prison and was transferred to the custody of the DHS/ICE. At that time, Resil was still subject to the three years of supervised release pursuant to his federal criminal conviction. Accordingly, on January 21, 2009, the DHS/ICE reviewed Resil's custody status and released him under an Order of Supervision. In March 2010, however, Resil violated the terms of his federal supervised release and was arrested by the U.S. Marshals. (See Resp. Ex. 5, May 3, 2010 Notice of Revocation of Release). Due to his federal arrest for violating the terms of his supervised

release, the DHS/ICE issued Resil a Notice of Revocation of Release, dated May 3, 2010, and returned Resil to DHS custody. (Id.). On June 1, 2010, the DHS/ICE reviewed its custody of Resil and again released him on an Order of Supervision. (Resp. Ex. 6, June 1, 2010 Order of Supervision). As one condition of his release, Resil was required to report in person to the DHS Service Office located at 970 Broad Street in Newark, New Jersey on specified dates. (Id.). Resil failed to report to the DHS Service Office on July 8, 2010, as required by the June 1, 2010 Order of Supervision.

The Government contends that Resil remained a fugitive from DHS/ICE supervision for nearly four months until he was finally apprehended and returned to DHS/ICE custody on December 6, 2010.[2] On that same date, the DHS issued Resil a Notice of Revocation of Release based on changed circumstances that made it significantly likely that the DHS would be able to remove Resil to Haiti in the reasonably foreseeable future. (See Resp. Ex. 7, December 6, 2010 Notice of Revocation of Release). The DHS/ICE reviewed Resil's custody on March 3, 2011, about 90 days after he was returned to custody, and determined that Resil should remain in DHS/ICE custody pending his removal to Haiti, specifically

---

[2] The Court notes that the Government has not provided any specific documentation in support of its allegations that Resil failed to report to the DHS Service Office as required and that he was a fugitive for the four month period until his apprehension in early December 2010.

because Resil failed to submit any evidence that he would not pose a risk of flight if released.  (See Resp. Ex. 8, March 3, 2011 Decision to Continue Detention).

In response to Resil's habeas petition, the Government also submitted the Declaration of Mark R. Lenox ("Lenox Decl.") to provided the background concerning the DHS/ICE's repatriation of Haitians in general, and with regard to Resil, in particular. Lenox is the Deputy Assistant Director for the DHS/ICE, Enforcement and Removal Operations' Removal Management Division ("RMD"), located at the ICE Headquarters in Washington, D.C. (Lenox Decl., ¶ 1).  Lenox is directly responsible for the management of RMD, including its Travel Document Unit ("TDU"), which is responsible for liaising with representatives of the Government of Haiti for the repatriation of Haitian citizens and nationals who have been ordered removed from the United States. (Id., ¶ 3).  Lenox states that removals to Haiti, averaging 100 removals per month, were temporarily suspended immediately after the January 12, 2010 earthquake.  As a result of the suspension of removals to Haiti, the DHS/ICE released criminal Haitian detainees from detention under terms of supervision, pursuant to the legal ruling in Zadvydas v. Davis, 533 U.S. 678 (2001), which held that after 180 days in custody, custody may continue only if there is a significant likelihood of removal in the reasonably foreseeable future.  (Id., ¶¶ 4, 5).

In November 2010, the Government of Haiti and the U.S. Department of State initiated discussions concerning the resumption of removals of Haitian criminal aliens with final orders of removal. Shortly thereafter, the temporary suspension of removals to Haiti was lifted, and the United States successfully repatriated 27 Haitian citizens or nationals on a repatriation charter flight on January 20, 2011. On April 15, 2011, another repatriation charter flight returned 19 Haitian detainees to Haiti. Lenox states that after the April 2011 charter flight, subsequent flights were to occur every few weeks. (Id, ¶¶ 6, 7).

Lenox further avers that the Haitian Government typically requires a travel document request packet submission containing the alien's birth certificate and any other identification documentation necessary to make a determination that the alien is a Haitian citizen or national before the Haitian Government will authorize repatriation. A personal interview between an Embassy official and the alien *may* also be needed to determine if the alien is a Haitian citizen or national. Lenox states that the Government of Haiti has been responsive to requests for travel documents in the past. (Id., ¶¶ 8,9 ).

Lenox also attests that he is familiar with Resil's case for repatriation, and states that Resil is scheduled to be removed by ICE charter to Haiti in the foreseeable future. In particular,

7

Lenox states that once Resil's travel document request package is finalized, he will be scheduled for removal on the next charter flight, and that Lenox does not foresee any difficulties regarding the Haitian Government's approval of Resil's travel packet.  (Id., ¶¶ 10,11).

In a letter received by the Clerk's Office on May 25, 2011, Resil wrote this Court for consideration of his custody review. Resil reiterates that there is no significant likelihood that he will be removed in the reasonably foreseeable future.  He further states that he has cooperated with the DHS/ICE in efforts to obtain his travel document by calling the "Consulate of Haiti" and by providing his fingerprints to the ICE.  He maintains that he has obeyed all rules and regulations since entering ICE custody and has remained infraction free with no incident reports.  Resil states that he has devoted ties to his family and community, and will reside with his mother, who is a U.S. National, pending removal.  He states he is not a flight risk or a threat to the community if released under supervision.  (See Document entry n. 6).  Significantly, Resil does not address or deny the Government's response to his habeas petition, which states that Resil had not complied with his federal supervised release or with the reporting conditions of the June 2010 Order of Release under Supervision.

II. DISCUSSION

A.  Standard of Review

Resil seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3). That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Under 28 U.S.C. § 2243, "[a] court ... entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.  Jurisdiction to Grant Habeas Relief

As stated earlier, Resil brings this habeas action under 28 U.S.C. § 2241(c)(3), which requires that the petitioner show that

9

"he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  The Court has subject matter jurisdiction over this petition because Resil is being detained within its jurisdiction at the time he filed his petition, and because resil asserts that his continued detention is not statutorily authorized and is constitutionally impermissible because it violates due process under the Fifth Amendment, as set forth in Zadvydas.

C.   Relevant Statutory and Case Law Authority

In this case, there is no dispute that Resil's detention is statutorily governed by 8 U.S.C. § 1231, because he is subject to a final order of removal.  Once a removal order becomes "final," the alien's "removal period" begins to run.  Specifically, the "removal period" starts on the latest of the following (1) the date when the order of removal issued by an Immigration Judge ("IJ") becomes administratively final (that is, appeal to BIA was either taken and ruled upon in the sense that the appeal was denied, or the time to file such appeal simply expired); or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date when the alien is released from confinement.  See 8 U.S.C. § 1231(a)(1)(B).

Under Section 1231(a)(1)(A), the government has a 90-day "removal period" to remove an alien.  Detention during this 90-day removal period is mandatory.  Section 1231(a)(1)(c), however, provides that this 90-day removal period may be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(c).

Moreover, even after the 90-day "removal period," the government may further detain the alien under 8 U.S.C. § 1231(a)(6).  However, the Supreme Court has held that aliens may be detained under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States."  Zadvydas v. Davis, 533 U.S. 678, 689 (2001).  Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court "for the sake of uniform administration in the federal courts" recognized a six-month "presumptively reasonable period of detention."  Id. at 700-01.  However, after establishing this "presumptively reasonable period of detention," the Supreme Court stressed that

> after this 6-month period, o[nly if] the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in

> confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

The alien bears the initial burden of establishing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to rebut that showing.  Zadvydas, 533 U.S. at 699-701.  See also, e.g., Xi v. U.S. I.N.S., 298 F.3d 832, 839-40 (9th Cir. 2002); Kacanic v. Elwood, 2002 WL 31520362 (E.D. Pa. Nov. 8, 2002); Fahim v. Ashcroft, 227 F. Supp.2d 1359, 1367-68 (N.D. Ga. 2002); Lema v. U.S. I.N.S., 214 F. Supp.2d 1116, 1117-18 (W.D. Wash. 2002), aff'd, 341 F.3d 853 (9th Cir. 2003).

Moreover, no language in Zadvydas excluded or limited the operation of the tolling-like function enunciated in 8 U.S.C. § 1231(a)(1)(c)("The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.").  Consequently, an alien who, during his presumptive six-month Zadvydas-based period, takes actions delaying his removal, cannot demand his release upon expiration of these six months.  See, e.g., Wang v.

12

Carbone, No. 05-2386 (JAP), 2005 WL 2656677 (D.N.J. Oct. 17, 2005)(calculating the presumptive period excluding the period of non-cooperation and relying on Riley v. Greene, 149 F. Supp.2d 1256, 1262 (D. Colo. 2001) and Sango-Dema v. District Director, 122 F. Supp.2d 213, 221 (D.Mass. 2000)). Rather, the period affected by the alien's actions is excluded from the six-month presumptive period articulated in Zadvydas, causing a quasi-tolling.

Thus, "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir.2003)(cited with approval in U.S. ex rel. Kovalev v. Ashcroft, 71 Fed. Appx. 919, 924 (3d Cir. 2003).

After Zadvydas, the DHS enacted regulations to meet the criteria establish by the Supreme Court to prevent indefinite detention pending removal. These regulations are codified at 8 C.F.R. § 241.4 ("Continued detention of inadmissible, criminal, and other aliens beyond the removal period"). Under these post-order custody review ("POCR") regulations, an alien detainee is entitled to review of his custody status before the expiration of the removal period, see 8 C.F.R. § 241.4(k)(1), and at annual

intervals thereafter, see 8 C.F.R. § 241.4(k)(2).  In addition, the alien has the right to request interim custody reviews not more than every three months in the time interval between annual reviews.  See 8 C.F.R. § 241.4(k)(2(iii).

D. Continued Detention Is Not Unconstitutional

Preliminarily, this Court finds that Resil has not met his burden of showing that his removal to Haiti is not likely in the reasonably foreseeable future.  Under 8 U.S.C. § 1231(a) and Zadvydas, Resil must provide evidence to the Court which shows that he has "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future."  Zadvydas, 533 U.S. at 681.  At that point, the Government must then provide evidence to rebut petitioner's showing.  Id.  Here, Resil has made no showing that there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.  Rather, he appears to suggest that since his final order of removal was issued in October 2008, and he has not been removed to date, his removal is not likely to occur.  He admits that he was taken into ICE custody on December 6, 2010, and that the Government has not yet removed him to Haiti, but he offers nothing more than this bald, unsupported assertion.

Under similar circumstances, such habeas petitions seeking release from detention pursuant to Zadvydas, were denied because

14

the petitioner could not produce some other evidence aside from the expiration of the six-month period that removal was not likely to occur in the reasonably foreseeable future. See Singh v. DHS/ICE, ___ F. Supp.2d ___, 2011 WL 589929 (D.N.J. Feb. 10, 2011); Boncy v. Ashcroft, 2006 WL 2927288, *1 (E.D. Pa. Oct. 10, 2006). Moreover, this Court notes that, at the time Resil filed this petition, he had not been in custody for more than six months pending removal. He was returned to ICE custody when apprehended in December 6, 2010, and he filed this habeas petition on April 8, 2011.

In contrast to petitioner's allegations otherwise, the Government has shown that repatriation of Haitian nationals and citizens subject to a final order of removal has recommenced in January 2011, and that since April 2011, such removal of Haitian citizens and nationals have started to occur on a regular basis. (See Lenox Decl., ¶ 7). Lenox further attests that Haiti has been responsive and cooperative in authorizing travel document request packages for repatriation, and that Resil's travel document package is soon to be finalized. (Lenox Decl., ¶¶ 8, 11). Moreover, Resil himself admits that he has been cooperative in the effort to obtain travel documents. (Docket entry no. 6). Thus, it appears that there are no impediments to Resil's removal to Haiti in the reasonably foreseeable future.

Finally, Resil has failed to demonstrate to this Court that his continued detention while awaiting removal to Haiti violates federal statutory law or due process.  Petitioner is entitled to an individualized custody review under the Due Process Clause of the Fifth Amendment.  See generally, Ngo v. INS, 192 F.3d 390, 398-99 (3d Cir. 1999); Oyedeji v. Ashcroft, 332 F. Supp.2d 747, 752-54 (M.D.Pa. 2004); Robinson v. District Director for ICE, 2009 WL 3366439 (M.D. Pa. Oct. 19, 2009); Wong v. Gonzalez, 2006 WL 995460 (D.N.J. April 12, 2006).  Post-Order custody reviews for criminal aliens detained while awaiting removal are governed by 8 C.F.R. § 241.4(k)(2), which provides for periodic and individualized custody reviews consistent with the criteria established by the Supreme Court in Zadvydas to prevent indefinite detention.  Namely, post-removal order annual reviews must be conducted pursuant to § 241.4(k)(2) and an alien may request interim individualized custody reviews every three months between annual reviews.  28 C.F.R. § 241.4(k)(2)(iii).  These individualized custody reviews also reflect the due process considerations discussed by the Third Circuit in Ngo.[3]

---

[3]  The procedural rules considered in Ngo required that an alien receive (1) written notice of custody review; (2) the right to representation; (3) the right to an annual personal interview; (4) a written explanation of the custody decision; (5) the opportunity for review of the decision; (6) reviews every six months; and (7) a refusal to presume continued detention based on criminal history.  Ngo, 192 F.3d at 399; cf. 8 C.F.R. § 241.4(i) (showing minor variations from the Ngo procedural standards primarily consisting of subsequent administrative changes).

This Court, having carefully considered the record, finds that Resil was afforded adequate due process through periodic and individualized reviews of his detention following the procedures in 8 C.F.R. § 241.4 and pursuant to Ngo. As the record in this case illustrates, from the time that his final order of removal was issued in October 2008, Resil has received post-order custody reviews ("POCR") as contemplated under 8 C.F.R. § 241.4. Resil's first custody review occurred on or about January 21, 2009, three months after the final order of removal was issued. At that time, Resil was released from custody on an Order of Supervision. However, Resil had violated the terms of his supervised release that was part of his criminal judgment, and on May 13, 2010, he was returned to ICE custody. Less than a month later, on June 1, 2010, the ICE again reviewed Resil's custody status and determined that he should be released under an Order of Supervision. The Court notes that during this time, removals to Haiti had been temporarily suspended due to the January 2010 earthquake.

Shortly after his release from detention on the June 1, 2010 Order of Supervision, Resil failed to report to the ICE Service Office in Newark, New Jersey, as required, and apparently remained a "fugitive" for four months until he was apprehended on December 6, 2010, and returned to ICE custody pursuant to a Notice of Revocation of Release. About three months later, on

March 3, 2011, the ICE conducted another POCR with respect to Resil's continued detention.  The ICE determined that Resil would not be released from custody because Resil did not submit any evidence to show that he would not pose a risk of flight if released.  (Resp. Ex. 8, March 3, 2011 Decision to Continue Detention).

Accordingly, as there is no indication that Resil was denied the type of individualized custody review due under the Fifth Amendment, the Court finds that Resil's continued detention at this juncture does not violate due process.

## CONCLUSION

For the reasons set forth above, this Court finds that Resil has failed to meet his burden of showing that there is no significant likelihood of removal to Haiti in the reasonably foreseeable future.  Resil provides no evidence to show that the ICE has been dilatory in removing petitioner to Haiti, or that there are any impediments to his removal in the near future.  Resil also fails to allege any difficulty or non-cooperation on the part of the Government of Haiti in providing or authorizing his travel documents.  Thus, Resil cannot show that his removal from the United States is not likely in the reasonably foreseeable future, in violation of <u>Zadvydas</u>, and he is not eligible for release under supervision pending removal.  Moreover, this Court finds that Resil has been afforded the

appropriate due process with regard to his continued detention and that the ICE has conducted timely and good faith POCRs of Resil's detention. Therefore, Resil's continued detention is lawful and satisfies the requirements under 8 U.S.C. § 1231(a)(6), 8 C.F.R. § 241.4, and the Due Process Clause of the Fifth Amendment. Accordingly, the petition for a writ of habeas corpus must be denied at this time. The motion for an Order to Show Cause will denied as moot. An appropriate order follows.

/s/ Jose L. Linares
JOSE L. LINARES
United States District Judge

Dated:   June 21, 2011